UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARIJIT BANERJEE and SHREEMANTI CHAKRABARTY, | |
| Plaintiffs, | Civil Action No. 22-4664 (RK) (JBD) |
| v. | **OPINION** |
| UR JADDOU, Director, U.S. Citizenship and Immigration Services, and ANTONY BLINKEN, Secretary, U.S. Department of State, | |
| Defendants. | |

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court on a Motion to Dismiss filed by Defendants Ur Jaddou, Director of the U.S. Citizenship and Immigration Services ("USCIS") and Antony Blinken, Secretary of the U.S. Department of State ("DOS") (collectively, "Defendants"). (ECF No. 14.) The Court has carefully considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED**.

    I.      **BACKGROUND**

    Plaintiffs Arijit Banerjee ("Banerjee") and Shreemanti Chakrabarty ("Chakrabarty") (collectively, "Plaintiffs") are Indian nationals living in the United States who have filed applications seeking to become lawful permanent residents. Plaintiffs' applications have been pending for almost three years. Plaintiffs brought this case to challenge the delay in review of their applications and the policies that caused the delay.

### a.  Statutory and Regulatory Background

The Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101, *et seq.*, governs the process for foreign nationals to obtain visas for temporary or permanent residence in the United States. Immigrant visas are intended for foreign national who seek to live permanently in the United States. 8 U.S.C. §§ 1101(a)(16), (2). With certain exceptions, there are three categories of immigrant visas: (1) family-sponsored ("FS"); (2) employment-based ("EB"); and (3) diversity, which are drawn annually from a lottery. 8 U.S.C. § 1151; *see also* U.S. Citizenship and Immigration Services, Green Card Through the Diversity Immigrant Visa Program, https://www.uscis.gov/green-card/green-card-eligibility/green-card-through-the-diversity-immigrant-visa-program (last updated Jan. 11, 2018).

This case concerns EB visas, which are divided into five preference categories. The categories relevant to this case are EB-2 and EB-3. The EB-2 preference category includes "persons who are members of the professions holding advanced degrees" and "persons with exceptional ability in the arts, sciences, or business." *See* U.S. Citizenship and Immigration Services, Permanent Workers, https://www.uscis.gov/working-in-the-united-states/permanent-workers (last updated Mar. 29, 2023). The EB-3 preference category includes "professionals, skilled workers, and other workers." *Id.* USCIS coordinates with DOS to allocate and distribute EB visas. For each fiscal year, the INA limits the number of people from each visa category who can receive immigrant visas. Currently, there is an annual limit of 140,000 EB visas that may be issued each year. 8 U.S.C. §§ 1151(c)–(d). In addition, nationals from certain countries may not exceed more than seven (7) percent of the total EB visas. 8 U.S.C. § 1152(a)(2). This country cap currently impacts China, India, Mexico, and the Philippines.

Noncitizens who are lawfully present in the United States may obtain EB visas by completing the following steps. First, a U.S. employer must file a labor certification with the Department of Labor ("DOL"). *See* U.S. Citizenship and Immigration Services Policy Manual, Vol. 6, Ch. 6 § A(1), (2); U.S. Citizenship and Immigration Services, Permanent Workers, https://www.uscis.gov/working-in-the-united-states/permanent-workers (last updated Mar. 29, 2023). Second, if the labor certification is approved by the DOL, the employer must file a Form I-140, immigration petition with USCIS. Third, once the petition is approved by USCIS, the noncitizen must file a Form I-485, application for adjustment of status. If the application is granted, the noncitizen receives a green card and becomes a lawful permanent resident. *See* 8 U.S.C. § 1101(a)(20); *see also* 8 U.S.C. § 1427.

Under Section 1255(a) of the INA, the adjudication of an adjustment of status application is based on three eligibility criteria: (1) the noncitizen must "make[] an application for such adjustment," (2) the noncitizen must be "eligible to receive an immigrant visa and [be] admissible to the United States for permanent residence," and (3) "an immigrant visa [must be] immediately available to [the noncitizen] at the time his application is filed." 8 U.S.C. § 1255(a). Under Section 1255(b) of the INA, "upon approval of an application for adjustment of status under subsection (a)," the Secretary of State shall "reduce by one" the number of visas authorized to be issued in the relevant preference category for the fiscal year then current. 8 U.S.C. § 1255(b). Thus, USCIS policy requires that a visa number be "current or immediately available" both at the time the application for adjustment of status is filed and at the time that application is approved. USCIS Policy Manual, Vol. 7, Ch. 6 § C(4).

Applications for visas are adjudicated in order of "priority date." For most EB-2 and EB-3 applicants, the priority date is the date when their labor certification application was filed with the

DOL. *See* U.S. Citizenship and Immigration Services, Green Card, Visa Retrogression, https://www.uscis.gov/green-card/green-card-processes-and-procedures/visa-availability-priority-dates/visa-retrogression (last updated Mar. 8, 2018). DOS publishes a monthly Visa Bulletin which lists the cut-off dates governing visa availability; the bulletin shows which priority dates are "current," meaning which applicants are eligible for visas. *Id.* A priority date is current when the date is *earlier* than the listed cut-off date for the relevant visa and country category.

When the number of available visas in a particular category exceeds the demand for visas in that category, the visas may be issued to applicants in order of priority date. 8 U.S.C. § 1152(a)(5). However, when USCIS receives more applicants in particular categories or from particular countries than there are available visas, the cut-off dates do not continue to progress forward—rather, the dates may be suspended or even reversed while the backlog of applications is addressed. *Id.* This is called "visa retrogression." (Parker Declaration, ECF No. 14-2 ("Parker Decl.") at 5.)  In such circumstances, an application which may have once been current is held in abeyance until the priority date becomes current again. *Id.*

For example, the Visa Bulletin published in November, 2023 lists a cut-off date for applicants from India of January 1, 2012 for EB-2 visas; the cut-off date for applicants from India for EB-3 visas is May 1, 2012. *See* U.S. Dep't of State, Bureau of Consular Affairs, Visa Bulletin, Number 83 Volume X (November 2023), available at https://travel.state.gov/content/dam/visas/Bulletins/visabulletin_November2023.pdf.  Thus, only applicants from India whose priority dates are *before* January 1, 2012 or May 1, 2012 are now eligible for EB-2 or EB-3 visas. DOS, in collaboration with USCIS, makes estimates of the anticipated visa demand for each quarter of each fiscal year. ("Parker Decl." at 7.) However, it is impossible to predict with scientific precision the volume of immigrant visa petitions or

4

applications for adjustment of status due to numerous unknown variables, which vary significantly from year to year and even throughout a given fiscal year. (*Id.*) Because USCIS cannot authorize more visas than the statutory cap, adjustments must be made, and periods of retrogression may vary from a few months to years. (*Id.* at 6.)

### b.  Factual Background

Plaintiffs are Indian nationals who maintain a residence in Lincroft, New Jersey. (First Amended Complaint, ECF No. 8 ("FAC"), ¶¶ 1–2.) Plaintiffs currently have lawful H-1B and H-4 nonimmigrant status. (*Id.* ¶ 76.) The H-1B program authorizes the temporary employment of nonimmigrants as workers in specialty occupations. U.S. Department of Labor, H-1B Program, https://www.dol.gov/agencies/whd/immigration/h1b (last visited Nov. 14, 2023). The H-4 program authorizes the temporary employment of dependent spouses of H-1B nonimmigrants. U.S. Citizenship and Immigration Services, Employment Authorization for Certain H-4 Dependent Spouses, https://www.uscis.gov/working-in-the-united-states/temporary-workers/h-1b-specialty-occupations-and-fashion-models/employment-authorization-for-certain-h-4-dependent-spouses (last updated Nov. 12, 2021). This case concerns Plaintiffs' efforts to adjust their status from temporary non-immigrants to permanent residents.  (FAC ¶¶ 14, 180, 194.)

On November 11, 2013, Banerjee's employer filed an application with the DOL seeking a labor certification for Banerjee. (*Id.* ¶ 78). Thus, Banerjee's priority date is November 11, 2013. After the DOL approved the labor certification, Banerjee's employer filed a Form I-140 petition with USCIS. (*Id.* ¶¶ 78–79.) Banerjee's petition was approved in the EB-2 preference category. (*Id.* ¶ 81.) However, at the time, Banerjee's visa was not yet current, meaning that his priority date

was *later* than the listed cut-off date for that category and, thus, he was not yet eligible for a visa. (*Id.* ¶ 82.)[1]

On December 11, 2020, both Plaintiffs filed Form I-485 applications seeking adjustment of status to that of lawful permanent residents. (*Id.* ¶ 87.)[2] According to Plaintiffs, by September, 2022, the visa bulletin listed December 1, 2014 as the cut-off date for EB-2 visa applicants from India. (*Id.* ¶ 98.) Thus, in September, 2022, Plaintiffs had become eligible for EB-2 visas because their priority date (November 11, 2013) was earlier than the listed cut-off date (December 1, 2014). (*Id.*) However, on September 6, 2022, the Department of State issued an urgent memo to USCIS stating that there were no more EB-2 visa numbers available for fiscal year 2022, which ended on September 30, 2022. (*Id.* ¶ 99.) Thus, EB-2 visas would not be issued until they became immediately available, and in the October, 2022 visa bulletin, the Department of State retrogressed the cut-off date for EB-2 visa applicants from India from December 1, 2014 to April 1, 2012. (*Id.* ¶¶ 100, 102.) According to Plaintiffs, USCIS subsequently announced that, while there were more than 40,000 adjustment of status applications pending for EB-2 visas, it would only issue 4,004 EB-2 visas in the 2023 fiscal year. (*Id.* ¶ 107.) Therefore, according to Plaintiffs, at this pace, it will take approximately ten (10) years for December 1, 2014 to become current again. (*Id.*)

---

[1] Plaintiffs also allege that while waiting for Banerjee's visa to become current, Banerjee's employers filed two more petitions "in an attempt to get a 'current' immigrant visa sooner." (FAC ¶ 83.) Both subsequent petitions were approved as EB-3 visas on March 12, 2018 and on December 31, 2020. (*Id.* ¶¶ 83–85.) The parties both appear to presume that the priority date for all three visa applications is November 11, 2013.

[2] The FAC does not provide any background information pertaining to Chakrabarty's application for a visa. The FAC alleges only that Plaintiffs had H-1B and H-4 visa status and that both Plaintiffs submitted applications for adjustment of status in December, 2020. However, Defendants have represented that the priority date for both Plaintiffs is based on the date Banerjee's employer filed a labor certification on his behalf. (ECF No. 16 at 5.) The Court thus presumes that Banerjee was the recipient of the H-1B visa and Chakrabarty was his dependent spouse lawfully present on an H-4 visa and that Chakrabarty's priority date is also November 11, 2013 because it is based on Banerjee's labor certification. *See* 8 U.S.C. § 1153(d) (family members are entitled to the same visa status); (*see also* Parker Decl. at 5 n.1 (explaining that family members "receive visas in the same category and with the same priority date as the principal applicant.")))

Plaintiffs argue that USCIS and DOS are withholding final agency action on pre-approved adjustment of status applications with current priority dates; Plaintiffs refer to this policy as the "Adjudication Hold Policy." (*Id.* ¶¶ 103, 108–109.) Plaintiffs allege that the Adjudication Hold Policy is unlawful, and that the delay in adjudication of their applications is unreasonable. (*Id.* at ¶¶ 112–113.)

### c. Procedural History

Plaintiffs filed this case on July 20, 2022. (ECF No. 1.) On October 24, 2022, Plaintiffs filed an Amended Complaint. Plaintiffs bring a single claim against Defendants for unlawful withholding under the Administrative Procedure Act ("APA"). (FAC ¶¶ 132–211.) Plaintiffs seek an order from the Court declaring the Adjudication Hold Policy unlawful, enjoining DOS from applying the policy against Plaintiffs, declaring USCIS delays unreasonable, and entering an order compelling USCIS to make a decision on Plaintiffs' applications within thirty (30) days, or if USCIS issues a request for additional evidence, within thirty (30) days of receipt of Plaintiffs' response to that request. (*Id.* at ¶¶ 212–18)

On January 23, 2023, Defendants moved to dismiss Plaintiffs' First Amended Complaint for lack of subject matter jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 14.) First, Defendants argue that the Court lacks subject matter jurisdiction over Plaintiffs' claims for three reasons: (1) the APA does not confer jurisdiction to review Defendants' adjudication of adjustment of status applications because they are discretionary judgments; (2) the INA forecloses judicial review of USCIS judgments and decisions regarding visa allocation in connection with applications for adjustment of status; and (3) Plaintiffs lack standing because they cannot establish a concrete and particularized injury or that their injuries can be redressed. (*Id.* at 15–16, 21–22, 27–28.) Second, Defendants argue that

Plaintiffs have failed to state an APA claim for unlawful withholding or unreasonable delay. (*Id.* at 29, 33.) On January 30, 2023, Plaintiffs filed a Response in opposition, (ECF No. 15), and on February 13, 2023, Defendants filed a Reply, (ECF No. 16.)

## II.     LEGAL STANDARD

### a.  Federal Rule of Civil Procedure (12)(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss based on lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). In deciding a Rule 12(b)(1) motion to dismiss, a court must first determine whether the party presents a facial or factual attack because that distinction determines how the pleading is reviewed. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "A facial attack concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *Young v. United States*, 152 F. Supp. 3d 337, 345 (D.N.J. 2015). Here, Defendants bring a facial attack based on Plaintiffs' assertion of subject matter jurisdiction pled in the First Amended Complaint. *Jamoussian v. Blinken*, No. 21-10980, 2022 WL 538424, at *1 (D.N.J. Feb. 23, 2022) (citing *Church of the Universal Bhd. v. Farmington Twp.* Supervisors, 296 F. App'x 285, 288 (3d Cir. 2008)). Accordingly, "the court must only consider the allegations of the complaint and documents referenced therein . . . in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). On this posture, a court presumes that it lacks subject matter jurisdiction, and "the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) (when jurisdiction is challenged under Rule 12(b)(1), the plaintiff bears the burden of persuasion).

### b. Federal Rule of Civil Procedure (12)(b)(6)

Under Federal Rule of Civil Procedure (12)(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 406 (D.N.J. 2018). "A pleading that offers labels and conclusions or a formulistic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).

### III.   **DISCUSSION**

Because jurisdiction is the threshold issue in this case, the Court will first consider whether Plaintiffs have met their burden of establishing this Court's jurisdiction over their APA claim. The Court concludes that both the APA and the INA foreclose judicial review of Plaintiffs' claims and that the Court lacks subject matter jurisdiction over this case. The Court therefore need not address the issue of Plaintiffs' standing and whether Plaintiffs have failed to state a claim for unlawful withholding or unreasonable delay.

### a. Plaintiffs' Claim Under the APA

Plaintiffs bring a claim for unlawful withholding under the APA. (FAC. ¶¶ 132–211.) Under Section 706(1) of the APA, federal courts "shall compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The APA establishes a "basic presumption of judicial

review [for] one suffering legal wrong because of agency action." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1905 (2020) (quotation marks and citation omitted). However, that presumption may be rebutted under Section 701(a)(2) of the APA which precludes judicial review when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see Dep't of Homeland Sec.*, 140 S. Ct. at 1905. Thus, a court may compel agency action only when "a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take.*" *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original). Defendants argue that judicial review is precluded under Section 701(a)(2) of the APA because Section 1255(a) of the INA explicitly commits to the Attorney General the authority to "in his discretion and under such regulations as he may prescribe" to adjust the status of a noncitizen to that of a lawful permanent resident. (ECF No. 14 (quoting 8 U.S.C. § 1255(a)).[3]

The Court finds that the APA does not provide a basis for the Court's jurisdiction over Plaintiffs' unlawful withholding claim for three reasons. First, Plaintiffs, who are represented by counsel, did not respond to Defendants' arguments that judicial review is precluded by Section 701(a)(2) of the APA, focusing their arguments solely on whether jurisdiction is foreclosed by the INA. It is Plaintiffs' burden to establish the Court's jurisdiction over this case. By failing to respond to Defendants' APA argument, Plaintiffs have conceded Defendants' argument and have failed to meet their jurisdictional burden. *See, e.g.*, *Millner v. Bayada Nurses, Inc.*, No. 05-3164, 2006 WL 231993, at *2 (D.N.J. Jan. 30, 2006); *Noramco LLC v. Dishman USA, Inc.*, No. 21-1696, 2022 WL 2817876, at *5 (D. Del. July 19, 2022).

---

[3] While 8 U.S.C. § 1255(a) refers to the Attorney General, the authority to grant an adjustment of status has been transferred to the Secretary of Homeland Security and USCIS pursuant to 6 U.S.C. §§ 271(b)(5) and 557. *Li v. Gonzalez*, No. 06–5911, 2007 WL1303000, at *3 n. 1 (D.N.J. May 3, 2007). For simplicity, the Court refers throughout this Opinion to the Attorney General's discretion.

Second, Plaintiffs acknowledge that decisions on adjustment of status applications are discretionary but argue that USCIS failed to render such decisions on their applications. At least one court in this District has concluded that the APA does not provide a basis for jurisdiction over a claim that an agency *failed* to take a discretionary action. *See, e.g.*, *Singh v. Holder*, No. 14-387, 2015 WL 1399055, at *5 (D.N.J. Mar. 25, 2015) ("[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take . . . The APA therefore does not provide a basis for jurisdiction over a claim that an agency failed to take a discretionary action." (quotation marks and citation omitted)).

Third, "judicial review of agency action is not available under the APA when such review is limited by another statute." *Fallas v. Jadou*, No. 22-304, 2023 WL 3736326, at *3 (D.N.J. May 31, 2023). Courts across the country have held that, where judicial review is limited by Section 1252(a)(2)(B) of the INA, "bringing a claim under the APA is not a workaround" to the INA's jurisdictional bar. *Id.*; *see also Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017) ("Appellants cannot avoid the jurisdictional bar established by 8 U.S.C. § 1252 simply by raising a claim under that section of the APA."); *Morina v. Mayorkas*, No. 22-2994, 2023 WL 22617 (S.D.N.Y. Jan. 3, 2023) (a plaintiff "cannot use the APA as a runaround to this statutory bar"). As discussed below, the INA forecloses judicial review of Plaintiffs' claims. Plaintiffs cannot avoid that jurisdictional bar by circumnavigating to the APA. Therefore, the Court concludes that the APA does not provide a jurisdictional refuge for Plaintiffs' claims.

**b. Reviewability Under the INA**

Turning to the INA, the Court finds that Section 1252 of the INA strips the Court of jurisdiction over Plaintiffs' APA claims. There are two jurisdiction-stripping provisions at issue in this case: Section 1252(a)(2)(B)(i) and (ii). The Court will address each in turn.

i.   Section 1252(a)(2)(B)(i)

Under Section 1252(a)(2)(B)(i) of the INA, "regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review[] any judgment regarding the granting of relief under section . . . 1555 of this title." 8 U.S.C. § 1252(a)(2)(B)(i). As the Court explained above, Section 1555(a) authorizes the Attorney General to adjust the status of a noncitizen to that of a lawful permanent resident "in his discretion and under such regulations as he may prescribe." The issue is whether Plaintiffs' claim pertains to a judgment regarding adjustments of status under Section 1255(a).

Defendants argue that the plain language of Section 1252(a)(2)(B)(i) prevents judicial review in this case. (ECF No. 14 at 23.) Defendants also argue that the Supreme Court's recent decision in *Patel v. Garland*, 596 U.S. 328 (2022) "confirms that [Section 1252(a)(2)(B)(i)] forecloses judicial review of USCIS's judgments and decisions implementing congressional directives on visa allocation in connection with an application to adjust status pursuant to 8 U.S.C. § 1255." (*Id.* at 21–22.) Plaintiffs counter that Section 1252(a)(2)(B)(i) does not bar judicial review in this case for two reasons: (1) this provision "precludes review only of 'judgments' of fact underlying adjustment of status denials in removal proceedings,"[4] and (2) this provision precludes review only of USCIS *actions*; it does not preclude review over "*inaction* related to adjustment of status petitions." (ECF No. 15 at 3.)

---

[4] A removal proceeding is the process through which an immigration judge from the Department of Justice's Executive Office for Immigration Review (EOIR) decides the inadmissibility or deportability of a noncitizen. 8 U.S.C. § 1229a. The decisions of the immigration judge may be appealed to the Board of Immigration Appeals (BIA) whose decisions may be appealed directly to the United States Circuit Courts. *See, e.g.*, *Yusupov v. Att'y Gen. of U.S.*, 518 F.3d 185, 195 (3d Cir. 2008), as amended (Mar. 27, 2008) (the federal circuit courts have jurisdiction to review the BIA's final orders of removal under INA § 242(a)(1) and 8 U.S.C. § 1252(a)(1)).

The Court will first consider Plaintiffs' argument that Section 1252(a)(2)(B)(i) applies only in the context of removal proceedings. In 2005, Congress amended the INA to add the "regardless of whether the judgment, decision, or action is made in removal proceedings" clause. *See* PL 109-13 (HR 1268) (May 11, 2005). In *Patel*, the Supreme Court recently examined the jurisdiction-stripping provision in Section 1252(a)(2)(B)(i) and determined that the 2005 amendment to the INA "expressly extended the jurisdictional bar to judgments made outside of removal proceedings." *Patel*, 596 U.S. at 346. The Court held that, "[f]ederal courts lack jurisdiction to review facts found as part of discretionary-relief proceedings under § 1255 and the other provisions enumerated in § 1252(a)(2)(B)(i)." *Id.* The Court explained that "any and all decisions relating to the granting or denying of discretionary relief" fall within Section 1252(a)(2)(B)(i)'s prohibition on judicial review. *Id.* While the Court in *Patel* was considering the reviewability of a request for relief from removal proceedings which had already been initiated by DHS, not the reviewability of pre-initiation USCIS decisions, the Court nonetheless stated in dicta that "foreclosing judicial review unless and until removal proceedings are initiated would be consistent with Congress' choice to reduce procedural protections in the context of discretionary relief." *Id.* (Congress chose "to provide reduced procedural protection for discretionary relief, the granting of which is not a matter of right under any circumstances, but rather is in all cases a matter of grace.").

Indeed, following the Supreme Court's decision in *Patel*, a number of Circuits have held that Section 1252(a)(2)(B)(i) bars judicial review of USCIS decisions on applications for adjustment of status. *See Abuzeid v. Mayorkas*, 62 F.4th 578, 584–85 (D.C. Cir. 2023); *Britkovyy v. Mayorkas*, 60 F.4th 1024, 1028–29 (7th Cir. 2023); *Herrera v. Garland*, No. 21-17052, 2022 WL 17101156, at *1 (9th Cir. Nov. 22, 2022). Courts in this District, *see, e.g., Fallas*, 2023 WL 3736326, at *4 , and across the country have reached the same result*, see, e.g., Boldt v. Jaddou*,

652 F. Supp. 3d 937, 941 (N.D. Ill. 2023); *Rabinovych v. Mayorkas*, 624 F. Supp. 3d 19, 26 (D. Mass. 2022), appeal dismissed, No. 22-1731, 2023 WL 2770984 (1st Cir. Jan. 13, 2023); *Fernandes v. Miller*, No. 22-12335, 2023 WL 1424171, at *4 (E.D. Mich. Jan. 31, 2023); *Morina v. Mayorkas*, No. 22-02994, 2023 WL 22617, at *10 (S.D.N.Y. Jan. 3, 2023). The Court adopts the reasoning of these cases and finds that the plain language of Section 1252(a)(2)(B)(i) precludes judicial review of judgments "regardless of whether the judgment . . . is made in removal proceedings," together with the Supreme Court's holding in *Patel*, compels the conclusion that the INA's jurisdictional bar is not limited to decisions made only in removal proceedings.

The Court thus turns to Plaintiffs' second argument: that "[n]either *Patel*'s holding nor its rationale indicates that § 1252(a)(2)(B)(i) precludes review over *inaction* . . . ." (ECF No. 15 at 3.) In this case, Plaintiffs do not simply challenge a USCIS denial of an application for adjustment of status. Rather, Plaintiffs challenge the so-called Adjudication Hold Policy under which USCIS and DOS, due to visa retrogression, do not approve adjustment of status applications until visa numbers become available. Plaintiffs argue that this Court has jurisdiction over their challenge to the Adjudication Hold Policy because Section 1252(a)(2)(B)(i) only precludes judicial review of judgments. Judgments, Plaintiffs argue, must pertain to the granting of relief and therefore do not include *inaction* on the part of Defendants. (ECF No. 15 at 4.)

While *Patel* takes an expansive view of Section 1252(a)(2)(B)(i) and determined that it prohibits review of "*any* judgment *regarding* the granting of relief under § 1255"—not just judgments made in removal proceedings—the Supreme Court nonetheless defined "judgment" as an "authoritative decision." *Patel*, 509 U.S. at 329. Thus, Plaintiffs' argument that a judgment cannot be interpreted to include *inaction* is colorably plausible. Nonetheless, the Court finds it unnecessary to determine whether the Adjudication Hold Policy constitutes a "judgment" under

subsection (i) because the Court finds that judicial review of the Adjudication Hold Policy is foreclosed by subsection (ii). The Court thus turns to subsection (ii).

ii.   Section 1252(a)(2)(B)(ii)

Section 1252(a)(2)(B)(ii) is broader than Section 1252(a)(2)(B)(i). Under subsection (ii), "regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review[] *any other decision or action* of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . ." 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added). Defendants argue that determining whether a visa number is available to an adjustment of status applicant based on priority date is integral to the determination made by USCIS whether to approve an application for adjustment of status and is thus plainly a "decision or action" specified to be within the discretionary authority of USCIS under 8. U.S.C. § 1255(a). (ECF No. 14 at 26.) Plaintiffs concede that decisions on adjustment of status applications are discretionary but argue that no statute explicitly specifies that "USCIS has the discretion to refuse to make a final decision altogether or make a decision on an unreasonable time frame." (ECF No. 15 at 6.)

Whether courts have jurisdiction to review allegations of unlawful withholding or unreasonable delay in adjustment of status applications is a subject of much debate. District courts have split on the question of whether Section 1252(a)(2)(B)(ii) precludes judicial review of such claims. Some courts have determined that the pace at which visa applications are adjudicated by USCIS may be reviewed by the courts, *see, e.g.*, *Tista v. Jaddou*, 577 F. Supp. 3d 1219 (D.N.M. 2021); *Pulido v. Cuccinelli*, 497 F. Supp. 3d 79, 89 (D.S.C. 2020); *Cao v. Upchurch*, 496 F. Supp. 2d 569, 574 (E.D. Pa. 2007), while others have determined that judicial review is foreclosed by

Section 1252(a)(2)(B)(ii), *see, e.g., Beshir v. Holder*, 10 F. Supp. 3d 165, 176 (D.D.C. 2014); *Namarra v. Mayorkas*, 924 F. Supp. 2d 1058, 1064 (D. Minn. 2013); *Safadi v. Howard*, 466 F. Supp. 2d 696, 700 (E.D. Va. 2006). Courts in other Districts have specifically held that USCIS's visa retrogression policy of holding applications for adjustment of status in abeyance is unreviewable based on Section 1252(a)(2)(B)(ii). *See, e.g., Patel v. Jaddou*, No. 22-11374, 2023 WL 6296165, at *11 (D. Mass. Sept. 27, 2023); *Kanapuram v. Jaddou*, No. 22 -168, 2023 WL 5655876, at *7 (N.D. Ga. Aug. 22, 2023); *Kale v. Jaddou*, No. 22-338, 2023 WL 4939367, at *7 (E.D.N.C. Aug. 2, 2023); *Tulsiyan v. Jaddou*, 2023 WL 4879913, at *3 (S.D. Fla. Jul. 26, 2023) *with*. However, the Third Circuit has not yet weighed in on the issue.

Absent clear guidance from the Third Circuit, the Court will begin with the plain language of the statute. Section 1255(a) establishes the authority of the Attorney General to adjudicate adjustment of status applications "in [its] discretion and under such regulations as he may prescribe." 8 U.S.C. § 1255(a). The plain language of Section 1255(a) provides that it is explicitly within Attorney General's discretion to prescribe regulations governing the process for issuing immigrant visas. The discretionary authority to regulate the process for adjudicating applications necessarily and commonsensically includes the discretionary authority to determine *when* those applications will be adjudicated and whether those applications may be held in abeyance. The Court also finds significant the fact that Section 1255 does not mandate a timeframe within which USCIS must render a decision on adjustment of status applications while other provisions of the INA do impose such constraints. *See, e.g.*, 8 U.S.C. § 1447(b).

This conclusion is bolstered by the decisions of other courts in this District.[5] While the Court is not aware of a case in this District that has squarely addressed whether courts have jurisdiction to review the policy of holding status adjustment applications in abeyance until visa numbers become available, numerous courts in this District have determined that the courts are without jurisdiction to review the "pace" at which USCIS processes status adjustment applications. *See, e.g.*, *Singh*, 2015 WL 1399055, at *8 (finding that Section 1255(a) "clearly grants discretion over the promulgation of regulations for adjudicating adjustment of status applications, which necessarily includes discretion over the pace of adjudication" (quotation marks and citation omitted)); *Conigliaro v. Chertoff*, No. 07-1543, 2008 WL 108953, at *3 (D.N.J. Jan. 9, 2008) ("Section 1252(a)(2)(B)(i) prohibits the Court from reviewing the pace at which the Attorney General adjudicates a particular adjustment of status application"); *Liu v. Gonzales*, No. 07-1797, 2007 WL 2916511, at *5 (D.N.J. Oct. 5, 2007) (same); *Zhang v. Dist. Dir., USCIS*, No. 07-362, 2007 WL 1797655, at *2 (D.N.J. June 20, 2007) (finding the fact that Section 1255(a) does not impose any time limit by which the Attorney General must decide upon applications for adjustment of status shows that Congress did not intend to limit the Attorney General's discretion in this

---

[5] The conclusion also follows from the Supreme Court's decision in *Patel*. While in *Patel* the Supreme Court was interpreting the jurisdictional bar in subsection (i), the Court suggested that the availability of judicial review outside of removal proceedings should be very limited or even wholly foreclosed:

> If the jurisdictional bar is broad [and the claims do not pertain to final orders of removal] . . . Patel and the Government say, USCIS decisions will be wholly insulated from judicial review. The reviewability of such decisions is not before us, and we do not decide it. But it is possible that Congress did, in fact, intend to close that door.[] The [2005] amendments . . . expressly extended the jurisdictional bar to judgments made outside of removal proceedings at the same time that they preserved review of legal and constitutional questions made within removal proceedings. *See* §§ 1252(a)(2)(B), (D). And foreclosing judicial review unless and until removal proceedings are initiated would be consistent . . . with Congress' choice to reduce procedural protections in the context of discretionary relief.

*Patel*, 596 U.S. at 345–46.

regard); *Kale v. Mayorkas*, No. 21-08095, 2021 WL 2652124, at *5 (D.N.J. June 28, 2021)

(same).[6]

Many courts in other Circuits have reached the same result on challenges to the pace of

application processing. In a case in the Western District of Virginia, the plaintiffs, as in this case,

conceded that it is within the discretion of USCIS to adjudicate applications for adjustment of

status, but argued that no statute specifies any discretion associated with the *pace* of application

processing. *Zhang v. Chertoff*, 491 F. Supp. 2d 590, 593 (W.D. Va. 2007). This Court agrees with

the holding in *Zhang* which rejected the plaintiffs' argument, explaining in pertinent part:

> [S]uch an argument rests on the untenable distinction between the adjustment
> decision, which is clearly within USCIS' discretion under § 1255(a), and the
> processing required to render that decision . . . A holding that USCIS does not have
> discretion over the pace of application processing would lead to the illogical
> conclusion that USCIS must reach an unreviewable decision within a reviewable
> period of time.

> *Id.* (citation omitted).

As noted above, some courts in other Circuits have even addressed the precise legal issue

raised in this case: whether courts have jurisdiction to review the policy of holding adjustment of

status applications in abeyance until visa numbers become available. A recent case in the District

of Massachusetts wherein the court addressed this issue, in a case with almost identical facts to the

case at bar, is particularly persuasive. In *Patel v. Jaddou*, the District of Massachusetts considered

whether the jurisdictional bar in Section 1251(a)(2)(B)(ii) precluded judicial review of USCIS's

---

[6] The Court also notes that the United States Court of Appeals for the Fifth Circuit has determined that
courts are without jurisdiction to review the pace of adjudication of adjustment of status applications. To
the Court's knowledge, the Fifth Circuit is the only Circuit Court to have squarely addressed this issue. In
*Bian v. Clinton*, the Fifth Circuit reasoned that "[i]f Congress had intended for only the USCIS's ultimate
decision to grant or deny an application to be discretionary—as distinguished from its interim decisions
made during the adjudicative process—then the word 'action' would be superfluous." 605 F.3d 249, 253-
54 (5th Cir. 2010), *vacated as moot*, No. 09-10568, 2010 WL 3633770 (5th Cir. Sept. 16, 2010).
Nonetheless, the decision was vacated shortly after it was decided because the plaintiff's I-485 application
was approved and the government moved to dismiss the appeal as moot.

policy of holding adjustment of status applications submitted by applicants from India for EB-2 or EB-3 visas, in abeyance until visa numbers in those country and preference categories become available. No. 22-11374, 2023 WL 6296165, at *11 (D. Mass. Sept. 27, 2023). In a carefully reasoned opinion that surveyed court decisions across the country and delved into the legislative history of Section 1255 of the INA, the court concluded that Section 1252(a)(2)(B)(ii) foreclosed the court's jurisdiction.

The court explained that the eligibility criteria in Section 1255(a) require that an immigrant visa be "immediately available" at the time the application is filed. Section 1255(b) instructs that when an application for adjustment of status is approved, the Secretary of State must reduce by one the number of visas available for that fiscal year. Section 1255(a) also states that the Attorney General *may* adjust the status of an applicant "in his discretion and under such regulations as he may prescribe." The court explained that Section 1255(a) creates "a prerequisite to adjustment of status (i.e., that a visa is immediately available at the time of *filing*), but it allows the [Attorney General] discretion in whether to adjust status, including discretion to additionally require an immediately available visa at adjudication *and approval.*" *Patel*, 2023 WL 6296165, at *9. Thus, based on the statutory language, it is within the Attorney General's discretion to hold applications in abeyance until a visa becomes available. *Id.* The Court also pointed out that, while Section 1255(a) establishes eligibility for an adjustment of status, it does not create an entitlement to adjudication. *Id.* at *11. Rather, Section 1255(a) must be read together with Section 1255(b) which makes receipt of a visa is dependent on the ability of the Secretary of State to reduce the number of available visas by one. *Id.* Thus, when no available visas exist, the application cannot be adjudicated. *Id.* The Court finds this reasoning persuasive and agrees that the authority to hold

applications in abeyance until a visa number becomes available is within the discretion of the Attorney General. Frankly, according to the statutory framework, it must be so.

The Court also notes that, although it is Plaintiffs' burden to establish the Court's subject matter jurisdiction over this case, Plaintiffs have not offered any case law that directly addresses whether Section 2152(a)(2)(B)(ii) strips the Court's jurisdiction over Plaintiffs' claims. Rather, Plaintiffs rely almost exclusively on the Supreme Court's decision in *Kucana v. Holder*, 558 U.S. 233, 251 (2010). Plaintiffs cite *Kucana* for the proposition that the Section 1252(a)(2)(B)(ii) only precludes judicial review of decisions explicitly specified to be in the Attorney General's discretion by legislation, not every discretionary decision. (ECF No. 15 at 6.) Plaintiffs' argument misses the mark. In *Kucana*, the Seventh Circuit held that subsection (ii) barred judicial review not only when specified by statute, but also when specified by administrative regulation. *Kucana*, 558 U.S. at 244. The Supreme Court reversed, finding that the BIA's discretionary authority to act on a motion to reopen was not specified in a statute, but only in administrative regulations; thus, Section 1252(a)(2)(B)(ii)'s jurisdiction-stripping provision which refers to "authority . . . specified under this subchapter" did not apply. *Id.* at 244. *Kucana* does not control where, as here, the purported discretionary authority at issue is conferred by a statute—in this case, Section 1255. *See Patel*, 2023 WL 6296165, at *8 (rejecting the plaintiff's argument based on *Kucana*).

In light of the express language of the INA and the guidance from courts in this District and around the country, this Court concludes that it does not have jurisdiction to review USCIS's decision to delay review of Plaintiffs' application for adjustment of status under Section 1255. Accordingly, Defendants' Motion to Dismiss under Federal Rule of Civil Prcoedure 12(b)(1) is **GRANTED**. The Court finds it unnecessary to consider whether, in the alternative, Plaintiffs have

failed to demonstrate standing and whether Plaintiffs have failed to state a claim for relief under the APA.

IV.     **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**, and Plaintiffs' Complaint is hereby **DISMISSED** with prejudice. An appropriate Order accompanies this Opinion.

 

_____

ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: November 20, 2023

IV.     <u>**CONCLUSION**</u>

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**, and Plaintiffs' Complaint is hereby **DISMISSED** with prejudice. An appropriate Order accompanies this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: November 20, 2023